UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SONYA MULDROW, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 01-2537 (ESH) |
| RE-DIRECT, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff is the mother of Kenneth Muldrow, a young man who was murdered while in the custody of defendant. The Court set out the facts of this case in its Memorandum Opinion denying defendant's motion for summary judgment and will not repeat them here. *See Muldrow v. Re-Direct*, *Inc*., Civ. No. 01-2537, slip op. (D.D.C. May 3, 2005). During a four-day trial, plaintiff argued that defendant was liable for the common law tort of negligence and for violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983. The jury returned a verdict for the plaintiff on September 15, 2005. It found that defendant was negligent and that this negligence proximately caused Kenneth's death. Although the jury found that Kenneth also was negligent, it did not find that his negligence caused his death. The jury also found that defendant violated Kenneth's constitutional rights and that this violation was also a proximate cause of Kenneth's death. Defendant now moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or, alternatively, for a new trial pursuant to Fed. R. Civ. P. 59.

ANALYSIS

I.  **Standard of Review**

In reviewing a motion for a judgment as a matter of law or, in the alternative, for a new trial, "[t]he jury verdict stands 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'"  *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999) (quoting *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998)); *see also Barbour v. Browner*, 181 F.3d 1342, 1344-45 (D.C. Cir. 1999) ("The jury's resolution of a factual dispute will stand if it is reasonably supported by the evidence.")  In other words, "[a] court can grant judgment as a matter of law only if no reasonable juror could have resolved the issues in the plaintiff's favor."  *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002).  Nevertheless, the evidence presented by the plaintiff must be "significantly probative," rather than "merely colorable" for the jury's verdict to stand.  *Siegel v. Mazda Motor Corp.*, 878 F.2d 435, 437 (D.C. Cir. 1989).

II.  **Contributory Negligence**

Defendant argues that the "testimony clearly established only one arguable breach, Kenneth's non-compliance with support services," that this non-compliance "was undisputedly the result of Kenneth's conscious decision," and that the only rational conclusion from these facts is that "Kenneth was contributorily negligent as a matter of law."  (Def.'s Mot. for New Trial or J. Notwithstanding the Verdict ["Mot."] at 3-5.)  This line of reasoning stands in stark contrast to the evidence presented at trial.  The evidence clearly established numerous failures on the part of Re-Direct which the jury could have concluded substantially contributed to Kenneth's death.  For example, Re-Direct had no clear policy for screening or training staff; it did not maintain records

regarding whether Kenneth had taken his medications; it did not use a system of rewards and sanctions to encourage proper behavior; it did not provide the in-house mental health services it purported to provide; and it did not enforce curfews or keep track of Kenneth's whereabouts. (*See* Pl.'s Opp'n at 4-8.)  From these facts, coupled with the opinion of plaintiff's juvenile justice expert, the jury could reasonably conclude that the confluence of these failures substantially contributed to Kenneth's death.  Furthermore, it is far from "indisputable" that Kenneth was solely responsible for his failure to attend his court-ordered services.[1]  And, even if this were the basis of the jury's finding that Kenneth was negligent-- which the Court has no way of knowing[2]-- the jury could have concluded that this negligence was not a proximate cause of Kenneth's death given the host of other problems with the Re-Direct program.[3]  Or, as plaintiff points out (Pl.'s Opp'n at 11), the jury could have reasonably determined that Re-Direct acted with reckless disregard, rendering Kenneth's own negligence irrelevant.  (*See* Jury Instructions at 17-18.)  In short, the jury's finding that Kenneth was negligent in no way precluded a rational finding that Re-Direct was liable.  Contrary to defendant's claim that the verdict was

---

[1] For example, Re-Direct's program description states that "[M]onitoring and supervision services are designed to ensure each youth's adherence to services described in the Individual Treatment Plan and deter the youth's abscondence.  The monitoring and supervision services shall be provided 24 hours a day, seven days a week, 365 days a year."  (Pl.'s Trial Ex. 10 at 21 (emphasis omitted).)

[2] Since defendant did not ask for a special verdict form, it can only speculate as to the rationale for the jury's findings.  These speculations cannot serve as a basis for disturbing the judgment.

[3] The same reasoning defeats defendant's argument that Kenneth's failure to take his medications was negligence and the proximate cause of his death.

"inconsistent and unreasonable and unexplainable" (Def.'s Mot. at 7), the record fully supports the jury's decision. *Barbour*, 181 F.3d at 1344-45.[4]

### III. Circumstances of Kenneth's Death

Defendant also argues that the scope of its duty to protect Kenneth from reasonably foreseeable harm could not be established "without the plaintiff establishing that Kenneth's death on December 8, 2000 was either 'targeted' or 'random'. . . . 'Reasonableness' would necessarily vary depending on the circumstances, circumstances which were never established in plaintiffs' case in chief." (Def.'s Mot. at 4.) Though the argument is not a model of clarity, defendant appears to be claiming that the jury had no rational basis for determining that the harm to Kenneth was reasonably foreseeable or that Re-Direct failed to take reasonable steps to protect against this harm.[5] Again, defendant ignores the evidence presented to the jury. A reasonable juror could have concluded that after Kenneth's near-fatal beating in October 1999, a responsible caretaker would have concluded he was at risk of another similar encounter and taken steps to reduce this risk by, for example, enforcing his curfew or supervising him more closely. Whether Kenneth's murderers "targeted" him or whether he was the victim of random violence hardly

---

[4] Even "when faced with an apparently inconsistent verdict," which is not the case here, "a court has a duty to attempt to read the verdict in a manner that will resolve inconsistencies." *City of Los Angeles v. Heller*, 475 U.S. 796, 805 (1986); *see also Machesney v. Larry Bruni, M.D., P.C.,* 905 F. Supp. 1122, 1132 (D.D.C. 1995) (rejecting motion for new trial on basis of inconsistent verdicts; defendant had waived argument because he neither requested a jury instruction to the effect that it would be impermissible for the jury to reach those verdicts nor brought the inconsistency to the attention of the judge prior to the jury's discharge).

[5] The jury was instructed: "If you find that a defendant was negligent but that the criminal acts or omissions of third persons also contributed to causing Kenneth Muldrow's death, then you have to decide whether the criminal acts of those who murdered Kenneth were reasonably foreseeable." (Jury Instructions at 15-16.)

seems to be the issue.  Thus, defendant has failed to meet its burden of showing that "no reasonable juror could have resolved the issues in the plaintiff's favor."  *Sparshott*, 311 F.3d at 429.

IV.     **Testimony of Detective Crawford**

In conjunction with its argument that plaintiff was required to establish whether Kenneth's beating was targeted or random, defendant challenges the Court's pre-trial decision to exclude Detective Crawford's testimony as to the motive of Kenneth's attackers.  (Def.'s Mot. at 7-8.)  The Court sees no reason to disturb its prior ruling on this issue.  Detective Crawford was told by one of Kenneth's murderers that he had heard from someone else that Kenneth stole some money out of his jacket.  The declarant had every reason to come up with a motive that would place the victim in an unfavorable light and little reason to speak truthfully.  The matter was never investigated further.  Thus, Detective Crawford's testimony was properly excluded as unreliable hearsay.  *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) (declaring "a trial judge has the discretion, and indeed the obligation, to exclude [investigative reports] that she determined to be untrustworthy.")  Moreover, as defendant has not shown why the motives of Kenneth's attackers are even relevant, the Court cannot conclude the lack of such testimony had any prejudicial effect on defendant's case.

V.      **Testimony of Paul DeMuro**

Plaintiff's juvenile justice expert, Paul DeMuro, testified that based on the circumstances surrounding the murders of several other youths in Re-Direct's care, he observed a pattern of failing to hold youths accountable for their actions and to properly vet and train staff.  Defendant contends that the Court should not have allowed DeMuro to express an opinion based on the

prior deaths because he did not provide such an opinion prior to trial. (Def. Mot. at 8-9.) According to defendant, the opinion was used to support plaintiff's claim of "deliberate indifference" and "constituted a Trial surprise and prejudicial error." (*Id.* at 8-9.) On the contrary, Mr. DeMuro's opinion was neither an unfair surprise nor was it sufficiently prejudicial to warrant a new trial. In his written report, DeMuro indicated that he had relied upon the District of Columbia Child Fatality Review Reports relating to the deaths of two youths other than Kenneth who had died while participating in Re-Direct programs. (*See* Pl.'s Opp'n, Ex. 2 at 3.) Additionally, during DeMuro's deposition on August 17, 2004, counsel for defendant questioned DeMuro about his testimony in *Smith v. District of Columbia*, Civ. No. 00-0894 (D.D.C.), which concerned one of these deaths. (*See* Pl.'s Opp'n, Ex. 3 at 34-36.) Thus, defense counsel had adequate warning that DeMuro had observed earlier problems with the Re-Direct program and an adequate opportunity to question whether those observations factored into the conclusions expressed in his written report.

Moreover, unexpected testimony "does not warrant a new trial unless it deprives the party of a fair hearing." *Brady v. Chem. Constr. Corp.*, 740 F.2d 195, 200 (2d Cir. 1984); *see also Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176-77 (D.D.C. 1986) (citing same); Fed. R. Civ. P. 61. Defendant has failed to show that DeMuro's testimony, even if surprising, was unfairly prejudicial. First, it was Kenneth King, not DeMuro, who first testified to the three prior murders. Consequently, the fact that those murders had occurred would have been before the jury regardless of DeMuro's testimony. Second, the jury had ample evidence other than Re-Direct's role in the prior deaths from which to conclude that Re-Direct was "deliberately indifferent" to Kenneth's safety and that its failure to properly care for Kenneth was part of a

"custom" or "practice." (*See* Jury Instructions at 19-21.)  For example, plaintiff demonstrated numerous instances where Re-Direct had falsely represented that it was providing services;[6/] consistently faulty or incomplete record-keeping as to Kenneth's whereabouts and medication; failure to update assessment reports about Kenneth (copying a prior report word-for-word instead); and inattention to Kenneth's attendance at his court-ordered services.[7/]  In light of these and the many other examples of Re-Direct's persistent failings, the Court cannot assume that DeMuro's testimony regarding the prior deaths of youths in Re-Direct's care was a crucial element in the jury's decisionmaking process.  Thus, any error in allowing this testimony was harmless and cannot serve as grounds for granting judgment as a matter of law or a new trial. Fed. R. Civ. P. 61.

In conclusion, defendant has failed to show that the evidence is at all "one-sided" or that any error at trial would have changed the outcome.  The Court will therefore deny defendant's motion and the judgment will stand.  An Order accompanies this Memorandum Opinion.

s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date: October 27, 2005

---

[6/]For instance, the record shows that the person hired as Re-Direct's clinical psychologist claimed to have conducted therapy sessions during the time Kenneth was unconscious or barely conscious in the hospital.  The evidence also indicates that this person lacked the necessary credentials as a clinical psychologist and thus was not even qualified to provide therapy.

[7/]For instance, Kenneth King testified that the programs are merely made available to the youths at the transitional home and that each program, not Re-Direct, is responsible for its clients' attendance.