UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SONYA MULDROW, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 01-2537 (ESH) |
| RE-DIRECT, INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff is the mother of Kenneth Muldrow, a youth who was murdered while in the custody of defendant, a contractor for the District of Columbia Youth Services Administration.[1] Mrs. Muldrow brought suit against defendant for civil rights violations and negligence. She claimed, and the jury agreed, that Re-Direct's failure to monitor Kenneth's medication and whereabouts, to connect him with his court-ordered mental health and substance abuse services, and to otherwise properly care for Kenneth, caused her son's death. After a four-day trial, the jury awarded her a total of $997,161 in compensatory and punitive damages. *See* Judgment on the Verdict [#79]. Pursuant to 42 U.S.C. § 1988(b), which provides that the prevailing party in a civil rights action can obtain "reasonable" attorneys' fees, plaintiff's attorneys now request that this Court award them $540,729 in fees and $33,515.95 in costs, for a total award of $574,244.95. Defendant opposes this request on the grounds that the hours, rates, and costs are all excessive. Upon consideration of the parties' submissions, the Court's knowledge of the case,

---

[1] The background facts of this case are set out in the Court's Memorandum Opinion of May 3, 2005. *Muldrow v. Re-Direct*, Civ. No. 01-2537, slip op. at 2-4 (D.D.C. May 3, 2005) (hereinafter "Summ J. Op.").

and for reasons explained below, the Court concludes that an award of $398,490.75 in fees and $22,528.30 in costs is reasonable.

## ANALYSIS

Where the plaintiff in a civil rights action is the prevailing party, fees are ordinarily awarded under § 1988 absent special circumstances. *See Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989). However, the Court has discretion to determine what is a "reasonable" fee, 42 U.S.C. § 1988(b), *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983), and it is the plaintiff's burden to document the appropriate hours and justify the reasonableness of the rates. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The Court will consider whether plaintiff has met her burden with respect to hours, rates, and costs in turn.

**I.     Hours**

Plaintiff has submitted contemporaneous time records that cover the near four-year course of the litigation.[2] (Pl.'s Mot. for Attorneys' Fees ["Mot."], Ex. B(1).) These records detail 354 hours spent by Gary Kohlman, the lead attorney on the case; 695.75 hours by Kathleen Keller, an associate; 89 hours by other attorneys, and 650 hours by paralegals and law clerks. (*Id.*) According to plaintiff, duplicative or unnecessary time entries totaling more than 47 hours have been excluded. (Mot. at 4-5.) In defendant's two-and-a-half page opposition, it merely objects to plaintiff's calculation of hours as "patently unreasonable." (Opp'n at 2.) However, the only entry defendant identifies as excessive is the 96 hours spent preparing the opposition to

---

[2] The length of time this case has been pending is no way indicative of the complexity of the case, since the case was stayed for over 15 months while a criminal case was pending against those charged with Kenneth Muldrow's death.

defendant's motion for summary judgment. While high, this amount is not unreasonable. Defendant's motion made sweeping challenges to all counts in plaintiff's complaint, *see* Summ. J. Op. at 1 n.2, and plaintiff's response was thorough and well-documented. Thus, the Court cannot find any principled basis for slashing the fees based on the hours claimed with respect to the summary judgment opposition.

However, plaintiff fails to document how or why attorneys other than Mr. Kohlman, Ms. Keller, and Michael Sampson (Ms. Keller's predecessor) were involved in the case. The Court finds the inclusion of these other attorneys' hours to be duplicative or unnecessary and will not include them in its final calculation. *Hensley*, 461 U.S. at 433-34 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from [its] initial fee calculation hours that were not reasonably expended.") (internal quotation marks and citation omitted).

## II.     Rates

Plaintiff adopts the so-called *Laffey* matrix originally established in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), as the benchmark for "reasonable fees."[3] (*See* Mot., Ex. B(2).) Courts in this Circuit have often relied on the *Laffey* matrix, or an updated version thereof, to determine appropriate fee awards based on market rates, even where the *Laffey* rates are not the rates actually charged to the client. *See, e.g.*, *Covington*, 57 F.3d at 1108; *Falica v. Advance Tenant Svcs.*, 384 F. Supp.

---

[3] The original *Laffey* matrix presented a grid which established hourly rates for lawyers of differing levels of experience during the period June 1, 1981 through May 31, 1982. Plaintiff has updated the rates from the 1981-82 version using a methodology approved by this Court. *See, e.g.*, *Salazar*, 123 F. Supp. 2d 8, 13-14 (D.D.C. 2000).

2d 75, 78-79 (D.D.C. 2005); *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000); *see also Bd. of Trustees of the Hotel and Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 806-07 (D.C. Cir. 1998); *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1524 (D.C. Cir. 1988). Based on an updated *Laffey* matrix, plaintiff proposes a rate of $596/hr for Mr. Kohlman's time; $305/hr for Ms. Keller's time; and $136/hr for the time of paralegals and law clerks. Defendant asserts that "these rates are outrageous and unjustifiable." (Opp'n at 2.)

In *Covington*, the Court of Appeals articulated the three-part burden of parties' seeking attorneys fees under § 1988. First, "in cases in which prevailing attorneys request rates which are greater than those they normally charge, the attorneys must offer some evidence that they charge reduced rates for public-spirited or non-economic reasons." *Id.* at 1107. Second, they "must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled." *Id.* at 1108. Third, they "must produce data concerning the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation." The Court held that an updated *Laffey* matrix alone constitutes sufficient evidence to demonstrate the third element. *Id.* at 1109.

The Court does not question that the skill, experience, and reputation of plaintiff's attorneys is of the highest caliber or that their reduced rates are public-spirited. Moreover, contrary to defendant's objection, use of the *Laffey* matrix as a measure of appropriate fees for complex federal litigation has gained acceptance in this Circuit. *See, e.g.*, *Salazar*, 123 F. Supp. 2d at 13.[4/] However, a more troubling issue is whether these extreme high-end fees should apply

---

[4/]Nor does the Court object to plaintiff's use of the *Laffey* rates for 2005-06 even though much of the litigation took place several years ago. The Supreme Court has held that it is acceptable to use current market rates, rather than historic rates, as a convenient method of

in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues.[5] These factors all distinguish this lawsuit from the type of case in which *Laffey* fees are typically awarded. For example, the attorneys in *Covington* brought a § 1983 action on behalf of ten prison inmates who were beaten while shackled and handcuffed and nine inmates who were sent to a maximum security facility. 57 F.3d at 1103. *Salazar* concerned a class action which proceeded on three tracks simultaneously, requiring attorneys to monitor compliance with a remedial order, respond to an appeal and file a cross-appeal, and engage in extensive settlement negotiations which required the redrafting of remedial order. 123 F. Supp. 2d at 15-16. In short, plaintiff's attorneys have not successfully demonstrated "the complexity of the case they handled" as required under *Covington*. 57 F.3d at 1108. *See also Salazar*, 123 F. Supp. 2d at 12; *Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 202 (D.D.C. 2001) (reducing fees below those calculated using the *Laffey* rates in part because "[o]nce [the] appeal was completed, the resulting case was a simple Title VII action involving a handful of witness on each side and a short trial.").

---

compensating prevailing parties for a delay in receiving payment. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989).

[5] Re-Direct, under the name Educational Solutions Academy, was a defendant in a similar case prosecuted by plaintiff's attorneys that went to trial before the Honorable Gladys Kessler. *See Smith v. District of Columbia*, 413 F.3d 86 (D.C. Cir. 2005).

Accordingly, the Court will reduce the fee award based on *Laffey* rates by 25 percent to ensure that the award is "reasonable" for this type of litigation. *See Falica*, 384 F. Supp. 2d at 78 ("Using [the *Laffey*] matrix as a guide, the Court must then exercise its discretion to adjust this sum upward or downward to arrive at a final fee award that reflects 'the characteristics of the particular case (and counsel) for which the award is sought.'") (quoting *Laffey*, 572 F. Supp. at 361). This reduction is particularly appropriate in light of plaintiff's disproportionate fee request in relation to the size of the judgment. Whereas plaintiff's attorneys request a fee award that would amount to approximately 54 percent of the $997,161 judgment, the Court's award will amount to 40 percent of the judgment. This percentage is still more than generous, since it is significantly higher than the typical contingency fee earned in this type of case.

One other minor adjustment relates to the fees of Michael Sampson. Plaintiff applies the *Laffey* rate for an attorney with four to seven years experience ($305/hr) to Mr. Sampson's hours. However, Mr. Sampson only graduated from law school in 1999 (Mot., Ex. B at 5) and the last time he worked on the case was in November 2002. (*Id.*, Ex. B(1) at 9.) Although he began his fourth year of practice in June 2002,[6] the majority of his work was performed as an inexperienced attorney. Thus, the Court will apply the *Laffey* rate for attorneys with one to three years experience ($249/hr) to Mr. Sampson's hours.

## III.   Costs

Plaintiff's attorneys claim to have incurred approximately $33,515.95 in expenses, exclusive of expert fees. While defendant characterizes plaintiff's requested costs as "wasteful

---

[6]"Years out of law school" is calculated from June 1 of each year, when most law students graduate. (*See* Mot., Ex. B(2).)

expense," it provides no specific objections.  Plaintiff's requests for reimbursement for out-of-pocket costs relating to postage, phone calls, couriers, computer research fees, investigative fees, document production, outside photocopying, medical records, books and publications, and photographs are reasonable and appropriate.  Plaintiff has properly excluded expert witness fees and all costs that may be taxed against defendant under Rule 54(d)(1) and Local Rule 54.1  However, although it is not the Court's obligation to perform a line-by-line examination of plaintiff's expenses in the absence of any specific objections, there are several undocumented or unreasonable requests which the Court will exclude from its final calculation.  Plaintiff has not provided sufficient justification for awarding $714 in messenger fees or $816.05 in local transportation.  The Court cannot discern from plaintiff's records whether these costs were necessary and reasonable.  Similarly, the in-house photocopying expenses are not supported by any description of the purpose of the expenditure or of the rates charged.  Finally, the Court does not find that secretarial overtime or meals should constitute recoverable costs of the litigation.

## IV.     Calculation of Award

Based on the adjustments discussed above, the Court calculates the reasonable fees for attorneys' services as follows.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| W. Gary Kohlman | 354 | $596/hr | $210,984.00 |
| Kathleen Keller | 695.75 | $305/hr | $212,203.75 |
| Michael Sampson | 79.25 | $249/hr | $19,733.25 |
| Law Clerks and Paralegals | 650 | $136/hr | $88,400.00 |
| Total | | | $531,321.00 |
| **Total Fees with -25% adjustment** | | | **$398,490.75** |

Subtracting unreasonable or undocumented costs, as well as experts' fees and costs that may be taxed against defendant under Rule 54(d)(1) and Local Rule 54.1, from the expenses listed in plaintiff's Exhibit B(1) results in the following award for expenses.[7]

| Type of Expense | Cost |
| --- | --- |
| Postage | $98.03 |
| Telephone Calls | $310.93 |
| Overnight Courier | $476.20 |
| Computer Research | $6,285.40 |
| Service of Process (non-taxable) | $2,220.55 |
| Investigative Fees | $4,917.79 |
| Document Production | $3,543.23 |
| Outside Photocopying | $3,893.42 |
| Medical Records | $284.00 |
| Books and Publications | $73.75 |
| Photographs | $425.00 |
| **Total Expenses** | **$ 22,528.30** |

The total award for attorneys' fees and nontaxable costs is thus **$421,019.05 .**  An appropriate Order accompanies this Memorandum Opinion.

s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 27, 2005

---

[7] While these calculations generally correspond with plaintiff's narrative of costs (Mot. at 10-11), the Court has not attempted to guess what costs plaintiff did or did not include in the lump sum for "miscellaneous items" listed there. (*Id.*)